Estate of George J. Helmers, Deceased, Maude Helmers, Executrix v. Commissioner.
Estate of George J. Helmers v. Commissioner
Docket No. 22172.
United States Tax Court
1950 Tax Ct. Memo LEXIS 170; 9 T.C.M. (CCH) 524; T.C.M. (RIA) 50154; June 20, 1950
*170 Reed O. Gentry, Esq., for the petitioner. Elmer L. Corbin, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves a deficiency in Federal estate tax in the amount of $15,693.21. The only question to be determined is what was the fair market value of 130 shares of stock of Helmers Manufacturing Company, Kansas City, Missouri, as of the date of death of the decedent, George J. Helmers. The case was submitted on a stipulation of facts and oral evidence. The facts as stipulated are so found. Such part thereof as it is considered necessary to set forth is included with other facts found from the evidence adduced in our Findings of Fact Petitioner is the estate of George J. Helmers, deceased. His widow, Maude Helmers, is the executrix. The decedent died January 20, 1945. The estate tax return was filed with the collector of internal revenue for the district of Missouri. Included in his estate at the time of his death, decedent had 130 shares of stock of Helmers Manufacturing Company of Kansas City, Missouri. In the estate tax return filed for the estate the 130 shares of Helmers Manufacturing Company stock were *171 included at a value of $500 per share, or $65,000. In his final determination the respondent included the 130 shares of Helmers Manufacturing Company stock at a value of $1,000 per share, or $130,000. Helmers Manufacturing Company was organized approximately 60 years ago by the Helmers family for the purpose of manufacture and sale of furniture. About 1928 or 1929 it discontinued manufacturing and ever since has devoted its business to jobbing and the sale of furniture. Helmers Manufacturing Company was, at the basic date, a closely held family-owned corporation. Its capital consisted of 750 shares of common stock of a par value of $100 per share, or $75,000. No preferred stock was issued. As of the basic date, the stock was held as follows: Henry J. Helmers, Jr., president
178 shares
George J. Helmers, vice-president
130 shares
W. C. Helmers, treasurer
114 shares
E. P. Helmers, secretary
108 shares
W. H. Helmers
71.6 shares
Grace Helmers
68.4 shares
Carrie Helmers
28 shares
Mrs. C. E. Brown (decedent's sister)
28 shares
Helmers Manufacturing Company
4 shares
W. L. Young, Jr.
20 shares
Total
750 shares The only stock held outside the Helmers family *172 was the 20 shares owned by W. L. Young, Jr., and the four shares owned by the corporation. None of the stock has been sold for many years. It was not listed on any stock exchange. There were no bid and asked prices. Decedent and his family (wife and son) never spent any time socially with the other branches of the family. Up until the time of his death decedent had no relations with the other members of the family except from a purely business standpoint in the office. The balance sheet for Helmers Manufacturing Company dated December 31, 1935, carried the amount of $546,807.51 in its surplus account. The corporate earnings of Helmers Manufacturing Company for the years 1935 to 1948 were as follows: Extraneous Income
Profit or
Total Income
Income
(loss)
Profits on
or (loss)
or (loss)
from
Sale of
before
Federal
after
ordinary
Rents
Fixed
Fed. Inc.
Income
Federal In-
Year
operations
Received
Assets
Taxes
Taxes
come Taxes
1935
($17,731.40)
$ 3,332.96
($ 14.398.44)
($ 14,398.44)
1936
( 4,694.09)
1,666.48
( 3,027.61)
( 3,027.61)
1937
10,261.71
10,261.71
10,261.71
1938
( 11,514.47)
( 11,514.47)
( 11,514.47)
1939
( 91.28)
( 98.28)
( 98.28)
1940
5,507.62
5,507.62
5,507.62
1941
50,770.68
792.09
51,562.77
$12,300.79
39,261.98
1942
84,407.71
6,708.06
$19,433.68
110,549.45
34,319.12
76,230.33
1943
52,260.53
34,004.46
86,264.99
39,413.27
46,851.72
1944
31,378.03
34,875.06
66,253.09
24,093.00
42,160.09
1945
15,103.75
31,726.72
124,562.66
171,393.13
49,378.27
122,014.86
1946
125,922.06
29,947.93
155,869.99
56,584.79
99,285.20
*173 The average yearly earnings for the ten-year period 1935 to 1944, inclusive, disregarding all losses, were $29.37 per share. For the same period, taking into consideration the losses, they were $25.50 per share. For the five-year period from 1940 to 1944, inclusive, they were $56 per share. For the five-year period from 1941 to 1945, inclusive, they were $87.23 per share. The dividends paid by Helmers Manufacturing Company for the years 1935 to 1946, inclusive, were as follows: 1935
None
1941
None
1936
None
1942
$45,000
1937
None
1943
45,000
1938
None
1944
22,500
1939
None
1945
22,500
1940
None
1946
72,500
The balance sheet of Helmers Manufacturing Company for December 31, 1944, the nearest date (for which figures are available) to the basic date, is as follows: Cash
$196,624.86
Liberty and U.S. Treasury Bonds
152,232.00
Munlcipal Bonds
213,118.30
Accounts Receivable
35,654.26
Merchandise Inventory
Finished Goods
102,265.90
Fifth Floor Window Acct.
1,800.88
Fixed Assets
Manufacturing Dept. Buildings
94,601.37
Kansas City Real Estate
Land
34,000.00
Warehouse
160,577.30
Insurance
6,466.67
$997,341.54
Federal and State Income Taxes
24,093.00
Prepaid Orders
16,930.74
Reserve for Discounts
128.24
Reserve for Depreclation
241,241.96
Capital Stock
75,000.00
Surplus
639,947.60
$997,341.54
*174 The book or asset value of the stock of Helmers Manufacturing Company on December 31, 1944, was $953.26 per share. The Abernathy Furniture Company is a closed corporation, family controlled, engaged in jobbing and retail sale of furniture, with offices in Kansas City, Missouri, and Leavenworth, Kansas. The book value of its stock, based upon its net worth, was $100approximately a share. On March 19, 1949, a minority interest in the capital stock of the Abernathy Furniture Company was sold for $40 a share. The ordinary and average rate of return over the period of years 1935 to 1944, inclsive, in a similar sales business as Helmers Manufacturing Company is 8 per cent. The stock of Helmers Manufacturing Company had a value on January 20, 1945, for estate tax purposes, of $900 a share. Opinion The petitioner contends that the value of the stock on the date of death of the decedent was not in excess of $500 per share. The respondent's position, as stated upon brief, is that the value of the stock on the basic date was not less than $953.26, the book or asset value. The stock of Helmers Manufacturing Company was closely held and was not listed on any stock exchange. There *175 had not been any sales asked or asked prices for many years. The petitioner's valuation witness expressed his opinion that the stock was worth at the maximum $500 a share. The following method, briefly stated, was used by him in arriving at his result: He considered the facts as detailed on the balance sheets and profit and loss statements for the years 1935 to 1944; further, that the 130 shares of stock here under consideration were a minority interest of the 750 shares of stock issued and outstanding of a closely held corporation; and, further, that the security here in question was unlisted, that no transactions with regard to this security had taken place over a period of many, many years. On cross-examination the witness stated that he took several factors into consideration in determining the value he placed on the stock, such as the net worth of the company, the nature of the assets shown on the balance sheet as of December 31, 1944, the earning value of the stock for the years 1935 to 1944, and the "dividend-paying capacity." In considering the importance of book value in formulating his opinion the witness stated that the only basis on which the stock would be worth its *176 book value would be in liquidation of the company. He said that the interest here was a minority interest "locked into a [the] company," and that the book value had relatively little importance unless such factors are considered as the earning capacity of the company, the possibility of deriving dividends as a result of those earnings, the condition of the properties or equipment, and, accordingly, its ability to continue to make money without substantial capital expenditures. The witness followed this explanation with the statement: "I may not have exhausted all of them, but those are important factors." The witness did not consider the company's profit and loss statement or dividend payment record for 1945. Valuation of stock on a specified date under circumstances such as are present here requires us to give consideration to every relevant fact of record having a bearing upon the question. Augustus E. Staley, 41 B.T.A. 752, 769. It does not appear that the petitioner's witness gave any consideration to the possibility that the company would continue to earn money and pay dividends after the decedent's death as it did the four years previous. An omission of such *177 a vital element decreases the weight of the opinion of the witness. Neither do we think he gave the proper weight to the book value of the company. Considering first the condition of the assets of the company on December 31, 1944, we conclude that it was in an extremely liquid condition, for over half of its assets were in cash, United States Government bonds, and municipal bonds, and of its $997,341.54 worth of liabilities and net worth, $75,000 of that amount represented its capital stock and $639,949.60 was the amount in its surplus account. It is conceded that the book value of the stock was $953.26 per share. We are convinced that certain elements existing within the corporate structure of Helmers Manufacturing Company have a tendency to reduce the value of its stock and make it somewhat less valuable than the above-mentioned book value, but we do not believe that such elements lower the value as much as the petitioner contends. The petitioner argues, on brief, that the increased income of the company was due primarily to the war effort. We can not agree. On brief, the petitioner makes the following statement: "As shown by the evidence the Helmers Manufacturing Company in *178 the course of its normal operations and, for a period of many years before the beginning of the war, had suffered regular and, indeed, almost routine losses and it was not until the war began that the company actually made a profit and even then not by its ordinary operation, but by rental to a governmental agency of a previously unused and entirely unproductive warehouse separate and apart from its ordinary operation of jobbing and retail sales." The statement is not borne out by the evidence. We note that its surplus account on December 31, 1935, showed an amount of $546,807.51. There is no indication in the record that any of that amount represented paid-in surplus, hence, the corporation must have operated at a profit at some time. Neither are we convinced that the profitmaking ability of the corporation is limited to the war years. We have only to look at later years' profit and loss statements, for 1945 and 1946, to see that the corporation continued after the close of the war to make substantial profits. Neither are we convinced that the rent income, mentioned in the quoted portion of petitioner's brief, above, was limited to the war years. We can not close our eyes to realities *179 and say that such rent income will cease at the end of the war and at the same time know that in 1946 the profit and loss statement of the corporation revealed that it received $29,947.93 from rents. The petitioner also argues that the personal relationship between the family of the decedent and the remaining segment of the Helmers family was quite strained. That fact does not seem to have affected the dividend-paying policy of the corporation, for the years following the decedent's death, as well as for the three years previous to his death, the corporation paid substantial dividends, particularly if considered based on $100 par value of the stock. We are not impressed by petitioner's argument to use the years 1933 to 1939, inclusive, in calculating the average earnings of the corporation. We think a more accurate gauge of the value of the stock is portrayed in considering, along with all other facts, the average yearly earnings for the period 1940 to 1944 or 1941 to 1945, which [were] $56 and $87.25 per share, respectively. By capitalizing $56 at 8 per cent, the value of each share would be $700. By capitalizing $87.23 at 8 per cent, the value of each share would be $1,090.38. *180 No useful purpose would be served by discussing further evidence in the record. Our opinion, reached from a consideration of all of the evidence, is that the stock had a value of $900 a share on January 20, 1945, for estate tax purposes. Decision will be entered under Rule 50.